UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Robert Anthony Werner,

     Debtor.
_____/

Case No.: 14-47678
Chapter 13
Hon. Mark A. Randon

Robert Anthony Werner,

    Plaintiff,

v.

Specialized Loan Servicing, LLC,

    Defendant.
_____/

Adversary Proceeding
Case No.: 14-04607

**OPINION REGARDING VALUE OF REAL PROPERTY**

**I.    INTRODUCTION**

This is a Chapter 13 lien strip action. Robert A. Werner ("Debtor") has two mortgages on his primary residence in Richmond, Michigan ("the Property"). He filed this adversary proceeding to treat the second as an unsecured debt in his reorganization plan ("the lien strip"). The petition-date balance of Debtor's first mortgage is $124,652.14. Specialized Loan Servicing, LLC ("SLS") holds the second mortgage – Debtor owes $33,074.84. SLS opposes the lien strip.

The Court conducted a trial on March 19, 2015. Debtor testified. The Court also heard testimony and received competing appraisals from the parties' experts: SLS's appraiser values the Property at $140,000.00; Debtor's appraiser says it's worth $119,000.00. This opinion states the Court's findings of fact and conclusions of law. Because the Courts finds the Property is worth more than $124,652.14, SLS's second mortgage is not wholly unsecured, and judgment will enter in favor of SLS.

## II.     STIPULATIONS OF FACT

The parties have stipulated to the following facts, as stated in the Joint Final Pre-Trial Order filed March 12, 2015:

a.  The Plaintiff is the homeowner of real property located at 70381 Chaucer Drive, Richmond, Michigan 48062 ("Property");

b.  On May 1, 2014, the Plaintiff filed for relief under Chapter 13 of the Bankruptcy Code;

c.  The Property is Plaintiff's principal residence;

d.  The Property is encumbered by two mortgages;

e.  On August 10, 2004, Green Tree Servicing, Inc. recorded a mortgage against the Property in the amount of $132,000.00;

f.  Green Tree Servicing, Inc. has filed a secured Proof of Claim (Claim 9-1) in the amount of $124,652.14;

g.  On August 10, 2004, Defendant(s) recorded a second mortgage against the real property in the amount of $33,000.00[;]

h.  Defendant has filed a secured Proof of Claim (Claim No. 8-1) in the amount of $33,074.84[.][1]

(Dkt. No. 17 at p. 2).

## III. BACKGROUND

### A. *Debtor's Testimony*

The Property – built in 1989 – is approximately 25 years old. Debtor testified that the landscaping needs updating, one of the gutters needs to be replaced, the roof will only last a few more years, and there are problems with the drainage system. Debtor had to remove the carpet and sections of drywall in two basement bedrooms due to water damage. The lower-level carpet also needs to be replaced.

The Property has the original furnace; the air conditioning unit is approximately 20 years old.

Finally, Debtor testified that the wooden window frames are starting to rot, and the upper-level frames are separating from the glass.[2] He estimated the Property's value at $120,000.00.

---

[1] Claim No. 8-1 is actually for $33,084.74.

[2] Debtor also testified that the refrigerator works, but the stove igniters do not. He has repaired the washing machine twice, and the dryer destroys certain types of clothing. The Court does not consider the condition of appliances in determining the Property's value.

-3-

### B. Joy Hull's Testimony

Debtor's appraiser, Joy Hull, has been a licensed real estate appraiser since 1993. She has appraised over 5,000 homes for both buyers and lenders, and has testified in court approximately 12 times.

Hull's appraisal report – dated June 13, 2014 – valued the Property at $119,000.00 based on a walk through and visual inspection, followed by a search for recent comparable home sales through the Multiple Listing Service ("MLS") website.

Hull's appraisal report contains three comparable homes.[3]

---

[3]There are guidelines to consider when researching comparable homes:

> Comparable sales should have similar physical and legal characteristics when compared to the subject property. These characteristics include, but are not limited to, site, room count, gross living area, style, and condition. This does not mean that the comparable must be identical to the subject property, but it should be competitive and appeal to the same market participants that would also consider purchasing the subject property. Comparables that are significantly different from the subject property may be acceptable; however, the appraiser must describe the differences, consider these factors in the market value, and provide an explanation justifying the use of the comparable(s).
>
> Comparable sales from within the same neighborhood (including subdivision or project) as the subject property should be used when possible. Sale activity from within the neighborhood is the best indicator of value for properties in that neighborhood as sales prices of comparable properties from the same location should reflect the same positive and negative location characteristics.

FannieMae Selling Guide, https://www.fanniemae.com/content/guide/selling/b4/1.3/08.html (last visited April 1, 2015).

### 1. First and Second Comparable Homes

Hull's first two comparable homes are in the same subdivision as the Property and nearly identical in age, style, and square footage. The first home sold for $140,600.00 on June 5, 2014; the second for $140,000.00 on July 22, 2013. Because these homes were extensively updated – and the Property was not – Hull made a $16,000.00 downward adjustment to the sale price of the first home, and a $15,000.00 downward adjustment to the second. Therefore, Hull's comparison prices were $124,600.00 for the first home, and $125,000.00 for the second.

### 2. Third Comparable Home

The third comparable home Hull used is a 73-year-old ranch in an adjacent neighborhood that sold for $123,000.00 on November 25, 2013. Hull made upward and downward adjustments to the sale price to account for differences between the home and the Property.[4] The net result was a $3,810.00 downward adjustment for a comparison price of $119,190.00.

Hull believes the third home is the best of the three comparables to determine the Property's value because – like the Property – it had not been updated and had the lowest dollar-value adjustments.

### C.  *Paul D. Lee's Testimony*

---

[4]The downward adjustments included: (1) $1,000.00 for a larger lot size; (2) $5,000.00 for a walkout basement; and (3) $5,000.00 for a finished basement. The upward adjustments included: (1) $1,000.00 because the home was vinyl; (2) $3,690.00 because it was a short sale; and (3) $2,500.00 because it only had one bathroom.

SLS's appraiser, Paul D. Lee, has been a certified real estate appraiser for approximately 15 years. He has appraised over 6,000 homes for both buyers and lenders; he has never testified in court.

Lee's appraisal report – dated August 7, 2014 – valued the Property at $140,000.00. It was based on a walk through and visual inspection, followed by a search for recent comparable home sales through the MLS website, and two other online real estate services – MiRealSource and Realcomp.

Lee's appraisal report also contains three comparable homes.

### 1. First Comparable Home

Lee and Hull used the same first comparable home – the one that sold for $140,600.00 on June 5, 2014. However, Lee's downward adjustment to the sale price was only $6,000.00, resulting in a comparison price of $134,600.00.

Lee believes that this comparison price is entitled to great weight because the home is in the same subdivision as the Property and similar in style.

### 2. Second Comparable Home

Lee's second comparable home is also in the same subdivision as the Property and similar in age and square footage.[5] It sold for $150,000.00 on June 12, 2014. Because

---

[5] Hull testified that she would have used this home as a comparable, but did not have access to MiRealSource or Realcomp. Without seeing this home, Hull could not indicate the amount of adjustments she would have made.

the home's wider front made it more desirable than the Property, Lee made a $5,000.00 downward adjustment to the sale price, making the comparison price $145,000.00.

Lee believes this home is the best comparable based on its condition, lack of updates, and similarity in style and proximity to the Property.

### 3. Third Comparable Home

Lee's third comparable home is about a mile from the Property. It sold for $125,000.00 on March 14, 2014. Lee made upward and downward adjustments to the sale price to account for differences between the home and the Property.[6] The net result was a $500.00 upward adjustment, for a comparison price of $125,500.00.

## IV. JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. §§157(b)(2)(K).[7]

## V. ANALYSIS

Chapter 13 debtors are generally prohibited from modifying claims "secured only by a security interest in real property that is the debtor's primary residence." 11 U.S.C. § 1322(b)(2). An exception to the anti-modification provision applies if there are two (or

---

[6]The downward adjustments included: (1) $1,000.00 because the home has a fireplace; and (2) $12,600.00 because it was larger than the Property. The upward adjustments included: (1) $6,000.00 because it was a short sale; (2) $6,000.00 because the home's condition was below average; and (3) $2,100.00 because it sold on March 14, 2014.

[7]The parties have agreed that this Court has subject matter jurisdiction, and that this is a core proceeding. *See* Joint Final Pre-Trial Order (Dkt. No. 17 at p. 1).

more) mortgages on the home, and the home is worth less than the amount owed on the first mortgage.  In that case, the second mortgage can be "stripped" from the property, and treated as an unsecured debt in the reorganization plan.  *See Lane v. W. Interstate Bancorp* (*In re Lane*), 280 F.3d 663, 664 (6th Cir. 2002) ("[w]here a creditor holds a second mortgage on a homestead valued at less than the debtor's secured obligation to a first mortgagee, . . . the holder of the second mortgage has only an 'unsecured claim[.]'").

Debtor argues that he can avoid SLS's claimed security interest in the Property because its mortgage is not an "allowed secured claim."  11 U.S.C. § 506(a)(1):

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Debtor has the burden of proving – by a preponderance of the evidence – that the Property was worth less than $124,652.14 on the petition date.[8]  *In re McKinney*, 501 B.R. 338, 339-40 (Bankr. E.D. Mich. 2013); *Johnston v. Suntrust Bank (In re Johnston)*, 2013 WL 1844751, at **5-6 (Bankr. W.D. Va. April 12, 2013).

There is no evidence of the Property's value on May 1, 2014, the date of the petition.  However, the appraisal reports were completed within a couple months of that

---

[8]The Joint Final Pre-Trial Order states that the issue of fact to be litigated is the fair market value of the Property.  It does not indicate *when* that value is determined.

date (June and August 2014). The Court finds these dates close enough to the petition date; neither party argued otherwise. Debtor has not satisfied his burden.[9]

First, the Court finds Lee's testimony more reliable. As a *certified* real estate appraiser – compared to Hull's status as a *licensed* real estate appraiser – Lee has more education and experience.[10]

---

[9]The Court recognizes there is some disagreement about which party bears the burden of proof under 11 U.S.C. § 506(a). *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3rd Cir. 2012) ("[t]hree approaches to the burden of proof in proceedings to value secured claims under § 506(a) have predominated in bankruptcy cases."). Even if SLS bears the burden of proof, the Court finds it has proved – by a preponderance of the evidence – that the Property is worth more than $124,652.14.

[10]According to http://www.vaned.com/index.cfm/fa/APP/fa2/lic/state/MI, the minimum requirements for a Certified Residential Appraiser in Michigan are:

(1) Completion of a program of study for certified residential appraisers of at least 200 hours of instruction. Pass the state exam;

(2) 2,500 hours of appraisal experience including at least 2,000 hours of residential experience over at least 24 months; and

(3) An Associate degree or higher. In lieu of the required degree, 21 semester credit hours covering the following subject matter courses: English Composition; Principles of Economics (Micro or Macro); Finance; Algebra, Geometry or higher mathematics; Statistics; Computer Science; and Business or Real Estate Law.

A State Licensed Appraiser requires:

(1) Completion of a program of study for certified residential appraisers of at least 150 hours of instruction. Pass the state exam.

(2) 2,000 hours of appraisal experience including at least 1,500 hours of residential experience.

There are no college requirements.

Second, the Court agrees with Lee's assessment that the first comparable home – used by both appraisers – is entitled to great weight. This home is in the same subdivision as the Property; and is nearly identical in age, style, and square footage. The only significant difference is that the comparable home has been updated. In reaching an opinion on the comparison value, Hull made a $16,000.00 downward adjustment to the sale price; Lee's downward adjustment was only $6,000.00.

The first comparable home was clearly updated (e.g., granite counter tops, and new carpet and kitchen cabinets). But – according the Lee's testimony – the downward adjustment should not based on the cost of the updates, but rather, on what a buyer would reasonably pay for them. The Court declines to put an exact value on the updates, but finds they warrant a downward adjustment somewhere between $6,000.00 and $12,000.00. *See In re McKinney*, 501 B.R. 338, 340 (Bankr. E.D. Mich. July 26, 2013) ("determining the value of the Property is not something that can be done with any sort of scientific precision or certainty. It necessarily involves some uncertainty.").

Third, the Court also agrees with Lee's assessment that his second comparable home is entitled to great weight. Hull concedes she would also have used this home had she been able to access additional online real estate services. The home is in the same subdivision as the Property and similar in age and square footage. The only difference is the wider front. Lee made a $5,000.00 downward adjustment to the sale price, making the comparison price $145,000.00. Hull could have made up to $25,000.00 in downward

adjustments from the actual sale price of $150,000.00 and the comparison value would still exceed the amount Debtor owes on his first mortgage.[11]

Fourth, the Court questions the reliability of Hull's testimony that her third comparable home is entitled to the most weight. The only similarity between this home and the Property is that neither has been updated. The properties differ in all other respects – including age, style, and location. This comparable home is a ranch that is 50 years older than the Property and located in a different neighborhood. The Court finds this home is entitled to little, if any, weight.

Finally, although the Court finds Debtor testified honestly about the condition of the Property, his valuation of $120,000.00 is somewhat self-serving, and he is not an expert real estate appraiser. Therefore, the Court gives his testimony little weight.

The Court concludes that Debtor has not met his burden: the Property is worth more than $124,652.14.

## VI. CONCLUSION

Based on the findings of fact, conclusions of law, and the reasons stated in this opinion, the Court finds the Property is worth more than $124,652.14. Therefore, SLS's mortgage is not wholly unsecured and cannot be "stripped" from the Property. No later than *April 7, 2015*, counsel for SLS must submit a proposed judgment that is consistent with this opinion. The Court waives presentment of such proposed judgment.

---

[11] Based on the small differences between the home and the Property, the Court would likely find such a high adjustment unreasonable.

**IT IS ORDERED**.

**Signed on April 01, 2015**

            .

              /s/ Mark A. Randon
              Mark A. Randon
              United States Bankruptcy Judge